UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| Santos Argueta, et al. | § | CIVIL ACTION NO. |
| Plaintiff, | § | 3:20-cv-00367 |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| City of Galveston, et al. | § | |
| Defendant. | § | |

## DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

Defendants Officer Derrick Jaradi and City of Galveston, Texas move for final summary judgment for the following reasons:

i

## TABLE OF CONTENTS

Table of Contents ........................................................................................................ ii

Table of Authorities .................................................................................................... iv

Table of Exhibits ......................................................................................................... x

Nature and Stage of the Proceeding ......................................................................... 1

Issues Before the Court ............................................................................................... 1

Summary of the Argument ......................................................................................... 2

Summary of Evidence ................................................................................................. 2

Argument and Authorities .......................................................................................... 5

I.       Officer Jaradi did not violate the Fourth Amendment. ............................. 5

         **A.**    The evidence proves Officer Jaradi had reason to believe Luis
                    Argueta's actions posed a serious threat of harm to officers. ......... 5

         **B.**    Firing was lawful to stop Argueta from fleeing apprehension. .................. 10

II.      Plaintiffs failed to refute Officer Jaradi's immunity. ................................. 11

         A.     Existing *legal authority* did not fairly warn Officer Jaradi that he
                was prohibited from responding in self-defense as he did to the
                deadly threat Argueta's actions presented. ..................................... 11

         B.     Plaintiffs fail to identify *evidence* which would have informed every
                reasonable officer that Officer Jaradi's reaction to Argueta's
                precipitating criminal action was clearly unlawful. ....................... 14

III.     The City did not violate Argueta's rights. .................................................. 16

         A.     The City is entitled to judgment because Argueta was not deprived
                of any right. ..................................................................................... 16

         B.     There is no evidence of an unconstitutional City policy. ............... 17

                1.     City Council is the City's policymaker. ............................. 17

                2.     City policy and police department regulations are
                       facially constitutional. ..................................................... 19

3.    There is no evidence the City's policymaker was
deliberately indifferent to Argueta's rights. ...................................... 22

4.    Stale allegations of former claims against other
officers are no evidence of an existing City policy that
caused a deprivation of Argueta's rights. ........................................... 24

C.    No City policy was a moving force that directly caused a deprivation of
Argueta's rights. ...................................................................................... 27

IV.    Argueta's siblings lack standing and capacity to prosecute a claim. ...................... 28

V.    No Plaintiff has capacity to assert a claim through Texas survival statutes. .......... 28

Conclusion and Prayer .......................................................................................... 30

TABLE OF AUTHORITIES

Page(s)

Cases

*Aguillard v. McGowen*,
 207 F.3d 226 (5th Cir. 2000) .............................................................. 28, 30

*Allen v. City of Galveston*,
 2008 WL 905905 (S.D. Tex. 2008) .......................................................... 25

*Alvarez v. City of Brownsville*,
 904 F.3d 382 (5th Cir. 2018) .................................................................... 22

*Anderson v. Creighton*,
 483 U.S. 635 (1987) ................................................................................... 6

*Austin Nursing Ctr. v. Lovato*,
 171 S.W.3d 845 (Tex. 2005) ............................................................... 29, 30

*Baker v. Putnal*,
 75 F.3d 190 (5th Cir. 1996) ................................................................. 21, 25

*Benavides v. County of Wilson*,
 955 F.2d 968 (5th Cir. 1992) .................................................................... 21

*Bennett v. City of Slidell*,
 728 F.2d 762 (5th Cir.) (en banc), *cert. denied*, 472 U.S. 1016 (1985)
 ................................................................................................ 16, 17, 18, 25

*Board of County Commissioners of Bryan County, Oklahoma v. Brown*,
 520 U.S. 397 (1997) ...................................................................... 16, 22, 27

*Bolton v. City of Dallas*,
 541 F.3d 545 (5th Cir. 2008) .................................................................... 18

*Brosseau v. Haugen*,
 543 U.S. 194 (2004) (Per Curiam) ............................................... 12, 13, 15

*Brown v. Callahan*,
 623 F.3d 249 (5th Cir. 2010) .................................................................... 15

*Brown v. City of Houston*,
 337 F.3d 539 (5th Cir. 2003) .................................................................... 18

iv

*Burch v. City of San Antonio*,
    518 S.W.2d 540 (Tex. 1975)..........................................................................18

*Central Power & Light Co. v. City of San Juan*,
    962 S.W.2d 602 (Tex. App.—Corpus Christi 1998, pet. dism'd) ...............17

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986)......................................................................................16

*City of San Antonio v. Rodriquez*,
    856 S.W.2d 552 (Tex. App. — San Antonio 1993, writ denied) ................17

*City of St. Louis v. Praprotnik*,
    485 U.S. 112 (1988)......................................................................................18

*Conner v. Travis County*,
    209 F.3d 794 (5th Cir. 2000) .......................................................................21

*Connick v. Thompson*,
    560 U.S. 51 (2011)........................................................................................16

*Coon v. Ledbetter*,
    780 F.2d 1158 (5th Cir. 1986) .....................................................................25

*Cruz v. City of Galveston*,
    2012 WL 256 8159 (S.D. Tex. 2012) ..........................................................25

*Davidson v. City of Stafford*,
    848 F.3d 384 (5th Cir. 2017) .......................................................................25

*Day v. Rogers*,
    260 FED. APPX. 692 (5th Cir. 2007).............................................................25

*De Aguilar v. Boeing Co.*,
    47 F.3d 1404 (5th Cir. 1995) *cert. denied*, 516 U.S. 865 (1995)................29

*Garcia v. Blevins*,
    957 F.3d 596 (5th Cir. 2020), *cert. denied,* 141 S. Ct. 1058 (U.S. 2021)
    ............................................................................................... 9, 10, 13, 14

*Graham v. Connor*,
    490 U.S. 386 (1989).........................................................................5, 6, 7

*James v. Harris County*,
    577 F.3d 612 (5th Cir. 2009) .......................................................................27

*Kisela v. Hughes*,
    __ U.S. __, 138 S. Ct. 1148 (2018) ............................................................................. 14

*Mace v. City of Palestine*,
    333 F.3d 621 (5th Cir. 2003) ................................................................................. 12

*Mendez v. Poitevant*,
    823 F.3d 326 (5th Cir. 2016) ................................................................................... 6

*Mossey v. City of Galveston*,
    94 F.Supp. 2d 793 (S.D. Tex. 2000) ..................................................................... 25

*Muehler v. Mena*,
    544 U.S. 93 (2005) ................................................................................................... 5

*Mullenix v. Luna*,
    577 U.S. 7 (2015) ................................................................................................... 14

*Neu v. City of Galveston*,
    2013 U.S. LEXIS 115306 (S.D. Tex. 2013) .......................................................... 25

*Ontiveros v. City of Rosenberg*,
    564 F.3d 379 (5th Cir. 2009) ................................................................... 6, 7, 9, 15

*Pena v. City of Rio Grande City*,
    879 F.3d 613 (5th Cir. 2018) ................................................................................. 17

*Peterson v. City of Fort Worth*,
    588 F.3d 838 (5th Cir. 2009) ................................................................................. 26

*Pfannstiel v. City of Marion*,
    918 F.2d 1178 (5th Cir. 1990) ............................................................................... 15

*Pineda v. City of Houston*,
    291 F.3d 325 (5th Cir. 2002) ........................................................................... 19, 26

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001) ........................................................... 17, 25, 26, 27

*Ramirez v. Knoulton*,
    542 F.3d 124 (5th Cir. 2008) ............................................................. 7, 8, 10, 14

*Rivas-Villegas v. Cortesluna*,
    211 L.Ed.2d 164, 2021 U.S. LEXIS 5311 (2021) .................................................. 12

*Roberts v. City of Shreveport,*
    397 F.3d 287 (5th Cir. 2005) ................................................................ 19, 21

*Rockwell v. Brown,*
    664 F.3d 985 (5th Cir. 2011) ...................................................................... 6

*Rodgers v. Lancaster Police & Fire Dep't,*
    819 F.3d 205 (5th Cir. 2016) ............................................................... 29, 30

*Saenz v. Heldenfels Bros.,*
    183 F.3d 389 (5th Cir. 1999) .................................................................... 17

*Salazar-Limon v. City of Houston,*
    826 F.3d 272 (5th Cir. 2016) .................................................................. 8, 14

*Saldana v. Garza,*
    684 F.2d 1159 (5th Cir. 1982) .................................................................. 12

*Saucier v. Katz,*
    533 U.S. 194 (2001) ....................................................................... 6, 10, 15

*Scott v. Harris,*
    550 U.S. 372 (2007) .................................................................................. 11

*Shepherd v. City of Shreveport,*
    920 F.3d 278 (5th Cir. 2019) .................................................................. 6, 12

*Smith v. Brenoettsy,*
    158 F.3d 908 (5th Cir. 1998) .................................................................... 22

*Spiller v. City of Texas City,*
    130 F.3d 162 (5th Cir. 1997) .................................................................... 17

*Stroik v. Ponseti,*
    35 F.3d 155 (5th Cir. 1994) ........................................................................ 6

*Surratt v. McClarin,*
    851 F.3d 389 (5th Cir. 2017) .................................................................... 13

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ................................................................................. 10, 11

*Tharling v. City of Port Lavaca,*
    329 F.3d 422 (5th Cir. 2003) .................................................................... 17

*Thomas v. N.A. Chase Manhattan Bank*,
  994 F.2d 236 (5th Cir. 1993) ........................................................................ 28

*Thompson v. City of Galveston*,
  1998 U.S. App. LEXIS 39661 (5th Cir. 1998) ............................................ 25

*Thompson v. Mercer*,
  762 F.3d 433 (5th Cir. 2014) .................................................................. 11, 15

*Tomas Garza v. Briones*,
  943 F.3d 740 (5th Cir. 2019) ............................................................... 7, 8, 14

*Vann v. City of Southaven*,
  884 F.3d 307 (5th Cir. 2018) ................................................................ 12, 13

*Vincent v. City of Sulphur*,
  805 F.3d 543 (5th Cir. 2015) ........................................................................ 15

*Waganfeald v. Gusman*,
  674 F.3d 475 (5th Cir. 2012) ........................................................................ 15

*Webster v. City of Houston*,
  735 F.2d 838 (5th Cir. 1984) (en banc) ...................................................... 17

*White v. Pauly*,
  __ U.S. __, 137 S. Ct. 548 (2017) ......................................................... 13, 14

*Whren v. United States*,
  517 U.S. 806 (1996) ........................................................................... 9, 26, 27

*Young v. City of Killeen*,
  775 F.2d 1349 (5th Cir. 1985) ...................................................................... 8

*Zarnow v. City of Wichita Falls*,
  614 F.3d 161 (5th Cir. 2010) ........................................................................ 21

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 71.004 ........................................................... 28

TEX. CIV. PRAC. & REM. CODE § 71.021 ........................................................... 28

Tex. Loc. Gov't Code Chapters 21 and 51 ....................................................... 18

Tex. Transp. Code § 543.001 ........................................................................... 9

Texas Local Government Code Chapter 143 .................................................... 21

Texas Penal Code §§ 9.51-9.54 ...................................................... 23

Texas Penal Code §38.04 ........................................................ 9

Texas Transportation Code §547.302 .................................................. 9, 26

**Other Authorities**

Fourth Amendment ............................................... 5, 6, 7, 8, 10, 11, 12, 13, 23, 24

Fed. R. Civ. P. 17 ................................................................. 28

Fed. R. Civ. P. 56 ................................................................. 25

Fed. R. Evid. 602 ................................................................. 25

Fed. R. Evid. 611 ................................................................. 25

TABLE OF EXHIBITS

Exhibit 1       Plaintiffs' response to interrogatory

Exhibit 2       Officer Jaradi's declaration

Exhibit 3       Officer Larson's declaration

Exhibit 4       Captain Albert Rodriguez's declaration

Exhibit 5       Audio/video recording from Officer Jaradi's body-worn-camera

Exhibit 6       Audio/video recording from Officer Larson's body-worn-camera

Exhibit 7       Video recording from outside Sunny's Food Mart parking lot

Exhibit 8       Video recording from inside Sunny's Food Mart parking lot

Exhibit 9       Police Chief Vernon Hale's declaration

Exhibit 10      Galveston Home Rule Charter and Ordinances

Exhibit 11      Administrative investigation excerpts

Exhibit 12      Grand Jury notice

Exhibit 13      Video recording from police vehicle dash-cam

Exhibit 14      Excerpts from video recording from Officer Jaradi's body-worn-camera

Exhibit 15      Officer Jaradi's deposition

Exhibit 16      Verification of Summary Judgment Evidence

Exhibit 17      Plaintiff Blanca Granado's deposition

Exhibit 18      Plaintiff Jelldy Argueta's deposition

Exhibit 19      Galveston Police Department Policy Manual

Exhibit 20      Texas Commission on Law Enforcement Transcript regarding Officer Jaradi

Exhibit 21      Oath of Office regarding Officer Jaradi

Exhibit 22      Governmental records verification

Exhibit 23      Dismissal order and final judgment *Millburn v. Gomez*; Cause No. G-08-193; 2010 U.S. Dist. LEXIS 121699 (S.D. Tex. November 17, 2010.

Exhibit 24      Dismissal orders and final judgment *Backe v. LeBlanc, et al*; Cause No. 3-16-cv-00246; Doc. Nos. 85, 108, 194.

Exhibit 25      Dismissal order *Davis v. City of Galveston, et al*; Cause No. G-13-287

x

Exhibit 26    Dismissal order and final judgment *Ringer v. City of Galveston, et al*; Cause No. 3:18-cv-00037

Exhibit 27    Dismissal order and final judgment *Collins v. City of Galveston*, et al: Cause No. 3:18-cv-00198

Exhibit 28    Excerpts from video recording from Officer Larson's body-worn-camera

Exhibit 29    Autopsy report

## NATURE AND STAGE OF THE PROCEEDING

1.      On June 26, 2020, Plaintiffs' filed suit against Defendants. [Doc. 1]. The Court

entered a docket control order. [Doc. 31]. The parties participated in discovery and the

discovery period is closed. [Doc. 31]. Defendants move for summary judgment because

the evidence establishes that no reasonable jury could enter judgment in Plaintiffs' favor.

## ISSUES BEFORE THE COURT

2.      Whether summary judgment evidence establishes that Officer Derrick Jaradi used

unreasonable force against Luis Argueta that violated the Fourth Amendment?

3.      If a genuine factual dispute exists regarding whether Officer Jaradi violated the

Fourth Amendment, whether Plaintiffs have established Officer Jaradi's actions violated

clearly established law so as to disprove Officer Jaradi's presumed qualified immunity?

4.      If a genuine factual dispute exists regarding whether Officer Jaradi violated the

Fourth Amendment, who is the relevant City policymaker for establishing whether the City

violated the Fourth Amendment?

5.      If a genuine factual dispute exists regarding whether Officer Jaradi violated the

Fourth Amendment, whether summary judgment evidence establishes that the City

violated the Fourth Amendment?

6.      Whether Plaintiffs Jelldy Argueta and Tomas Argueta have standing and capacity

to assert any claim in this lawsuit?

7.      Whether any Plaintiff has standing and capacity to assert a claim through Texas

survival statutes?

1

## SUMMARY OF THE ARGUMENT

8.      There is no evidence from which a jury could reasonably find that Officer Jaradi or

the City deprived Argueta of a federally protected right. Plaintiffs failed to identify any

legal authority or evidence which shows Officer Jaradi violated the Fourth Amendment.

The summary judgment record instead establishes that the objectively reasonable force

Officer Jaradi used was necessary to stop the threat of serious harm Luis Argueta's actions

created. Additionally, Officer Jaradi is individually immune from liability because

Plaintiffs failed to identify legal authority or evidence which shows that Officer Jaradi

violated clearly established law. Existing legal authority did not fairly warn Officer Jaradi

he was prohibited from defending himself and Officer Larson under these circumstances.

9.      There is also no evidence from which a jury could reasonably find that any City

policy was the moving force that directly caused any violation of Argueta's federally

protected rights. Additionally, Argueta's siblings Jelldy and Tomas Argueta lack standing

and capacity to assert any claim in this litigation, and no Plaintiff has standing an capacity

to assert a claim under the Texas survival statutes.

## SUMMARY OF EVIDENCE

10.     On June 25, 2018, Officer Derrick Jaradi and Officer Matthew Larson were on duty

in a marked patrol vehicle. [Exs. 2; 3; 4 at ¶14, 11, 15, p. 3, l. 21-p. 4, l. 6].They saw a

suspected prostitute speaking with the occupants of a Ford Fusion in the front of a

convenience store. [Exs. 2; 3; 4 at ¶15, 11; p. 11, l. 24 – p. 12, l. 24]. At approximately

2:49 am, Officer Jaradi pulled into the convenience store parking lot to investigate and

parked next to, where Luis Argueta the Fusion driver, and passenger Maryann Luna, were

parked. [Exs. 2; 3; 4 at ¶15; 7 at counter 4:10, 15, p. 16 – p. 17, l. 10]. Almost immediately, Argueta drove out of the parking lot. [Exs. 2; 3; 4, at ¶15, 7 at counter 4:17; 8], 15 p. 19, l. 24 – p. 20, l. 16. Luna stated Argueta was "paranoid because the cops came in Sonny's[sic]." [Exs. 8, 11]. The Officers left the parking lot to investigate the suspicious behavior. [Exs. 2; 3; 7 at counter 4:23, 15, p. 21, l. 24 – 22, l. 20]. Officer Larson saw the Fusion a short time later. [Exs. 2; 3; 4 at ¶16, 15, ll. 8-16, p. 27, ll. 15-24]. The Officers saw Argueta driving through an alleyway without any headlights or taillights in violation of Texas Transportation Code §547.302 (Duty to Display Lights). [Exs. 2; 3; 4 at ¶17, 8; 13 at counter 0:00, 15, p. 28 ll. 3-8]. The Officers pulled behind Argueta and activated police emergency lights. [Exs. 2; 3; 4 at ¶¶17, 46; 5 at counter 1:21; 6 at counter 1:24; 8, 13 at counter 0:35, 15, l. 30, l. 4-p. 31, l. 17, p. 33, l. 12- p. 35, l. 8]. Argueta continued to drive without lights and failed to stop at two stop signs in violation of Texas Transportation Code §544.010 (Stop Signs and Yield Signs), while the Officers followed close behind. [Exs. 2; 3; 5 at counter 1:23; 6 at counter 1:26; 8, 13 at counter 0:37, 15, p. 41, l. 9 – p. 42, l. 11]. Officer Jaradi relayed over the radio the Fusion was not stopping and provided the vehicle's license plate. [Exs. 2; 3; 4 at ¶18, 15, p. 40- p. 41 l. 2, p. 42, ll. 15-17].

11.    Argueta eventually stopped in the 5300 block of Avenue L. [Exs. 2; 3; 6 at counter 1:53; 8; 13 at counter 1:02, 15, p. 42, ll. 2-10]. Argueta told Luna he had to go, he had to run, and Luna asked Argueta to stay in the car. [Ex. 8,]. Almost as soon as Argueta pulled the vehicle over, he got out of the vehicle and ran across the street, in violation of Texas Penal Code §38.04 (Evading Arrest or Detention). [Exs. 2; 3; 4 at ¶¶ 18, 28 3156, 3163, 6 at counter 1:54; 8; 13 at counter 1:05, 15, ll. 18-19]. Argueta ran, diagonally toward Officer

Jaradi, toward a dark lot, while holding his right arm and hand down to his side as if to conceal something. *Id.* Officer Larson got out of the patrol unit to pursue Argueta. [Exs. 2; 3; 4 at ¶18; 3156; 6 at counter 1:53; 13  counter 1:07]. Almost simultaneously, Officer Jaradi also got out of the patrol vehicle. [Exs. 2; 3; 4 at ¶18; 5 at counter 1:52, 15, p. 42 l. 23 - p. 43, l. 10]. Officer Jaradi saw Argueta's gun, unholstered his weapon, and shouted at Argueta to get down on the ground. [Exs. 2; 3; 4 at ¶21; 5 at counter 1:54; 8, 15, l. 46, l. 12 – p. 47, l. , p. 51 – 11- p. , p. 54, l. 3]. Three witnesses confirm hearing a command prior to shots being fired. [Ex. 4 at ¶¶30-32]. When Argueta ignored commands and continued to run, Officer Jaradi, who was trained on "action versus reaction," fired two shots at Argueta, who was approximately 15 feet away. [Exs. 2; 3; 4 at ¶¶ 19-22, 67-70; 5 at counter 1:57; 6 at counter 1:59; 8, 15, p. 47, ll. 3-18, 29]. Argueta fell onto his back, still holding a gun[1] in his right hand. [Exs. 2; 3; 4 at ¶¶22-23; 5 at counter 1:59, 6 at counter 2:05, 15, l. 24 – 48, l. 11]. Officer Jaradi shouted for Argueta to put his hands up, drop the gun and not to reach for it. [Exs. 2; 3; 4 at ¶23; 5 at counter 1:58; 6 at counter 2:06]. Argueta did not comply. [Exs. 4 at ¶23; 5 at counter 2:07]. Officer Jaradi called for EMS. [Exs. 2; 3; 4 at ¶23; 5 at counter 2:08]. Both Officers continued to shout at Argueta to drop the gun, and Argueta complied. [Exs. 2; 3 at ¶23; 5 at counter 2:12; 6 at counter 2:07]. Officer Larson instructed Argueta to roll onto his stomach, then Officer Jaradi kicked Argueta's gun away from Argueta's reach. [Exs. 2; 3; 4 at ¶24; 5 at counter 2:18; 6 , counter at 2:21].

---

[1]     Argueta's gun was a Glock model 21 .45 caliber pistol with a magazine extension, capable of holding thirty rounds of ammunition. [Ex. 4 at ¶28].

4

12.     Officer Thompson had a first aid kit and applied pressure to Argueta's wound. [Exs. 2; 3; 4 at ¶¶30, 81; 6 at counter 7:03]. EMS arrived shortly thereafter and took Argueta to the hospital. [Exs. 3; 4, at ¶26; 6 at counter 8:40]. Argueta passed away at the hospital. [Ex. 4 at ¶26]. On the same day as the incident, former Galveston Police Chief Vernon Hale requested the Office of Professional Standards perform an independent investigation for compliance with Galveston Police department rules and regulations. [Exs. 11, 19]. The shooting was also referred to the grand jury which ultimately decided to take "no action," finding legal justification for Officer Jaradi's use of force. [Ex. 12].

## ARGUMENT AND AUTHORITIES

**I.     Officer Jaradi did not violate the Fourth Amendment.**

   **A.     The evidence proves Officer Jaradi had reason to believe Luis Argueta's actions posed a serious threat of harm to officers.**

13.     "The **'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight**." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (emphasis added); *accord Muehler v. Mena*, 544 U.S. 93, 108, 125 S. Ct. 1465 (2005). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

> [The Court] **must avoid substituting [] personal notions of proper police procedure for the instantaneous decision of the officer at the scene**. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day.

What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Stroik v. Ponseti*, 35 F.3d 155, 158-59 (5th Cir. 1994) (emphasis added) (citations omitted).

14.     "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or others." *Ontiveros v. City of Rosenberg,* 564 F.3d 379, 382 (5th Cir. 2009). Because the Fourth Amendment only requires reasonable action, "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

15.     When evaluating the propriety of force, the "standard of reasonableness at the moment applies." *See Graham*, 490 U.S. at 396; *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019). "The excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's use of deadly force]." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011). "The question is not whether the officer actually believed that the suspect posed a threat of serious harm but whether a 'competent officer could have believed' as much." *Mendez v. Poitevant,* 823 F.3d 326, 331 (5th Cir. 2016) (citing *City & Cty of San Francisco v. Sheehan*, 575 U.S. 600, 615, 135 S. Ct. 1765 (2015)); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

16.     Evaluating the reasonableness of Officer Jaradi's action "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Graham*, 490 U.S. at 396. The evidence proves Argueta's death did not result directly and only from use of objectively unreasonable force that was clearly excessive to the need under the circumstances. *See Ontiveros*, 564 F.3d at 382. As explained, *infra,* a noncompliant suspect with a gun poses a threat of serious harm.

17.     In *Tomas Garza v. Briones*, 943 F.3d 740, 743 (5th Cir. 2019), police received reports Garza was sitting in front of a truck stop bar playing with a pistol. When officers arrived, they discovered Garza holding what was later revealed to be a bb gun. *Id.* Garza ignored commands to drop the weapon "and instead continued to move the firearm around in different directions while making facial gestures." *Id*. "Garza did not have his finger on the trigger and was not pointing the gun at anyone." *Id*. Shortly thereafter, more officers arrived, and formed a semi-circle around Garza, who still put the firearm down. *Id.* Garza raised his weapon, pointed it in an officer's direction, and Garza was shot eighteen times and died. *Id.* at 744. The Fifth Circuit held, when "confronting an unpredictable man armed with a dangerous weapon," law enforcement officers "may use deadly force…without violating the Fourth Amendment." *Id.* at 745. The direction of where the gun was aimed was not determinative of whether a decedent was subjected to excessive force because "reasonable officer in any of the defendants' shoes would have believed that [the suspect] posed a serious threat regardless of the direction [of his] gun." *Id.*

18.     In *Ramirez v. Knoulton*, 542 F.3d 124, 126-27 (5th Cir. 2008), Ramirez was followed by officers who were instructed to pull Ramirez over because he was suicidal and armed. Ramirez did not immediately pull over, but finally stopped on the side of a secluded road. Officers crouched behind patrol cars and told Ramirez to keep his hands in sight.

Ramirez did not comply, and showed a gun in his right hand, the side of his body opposite of the officers. Ramirez brought his hands to his waist and Officer Knoulton shot Ramirez. *Id.* The trial court opined Officer Knoulton's action was objectively unreasonable because Ramirez did not raise his weapon, discharge the weapon, or point it at any officer. *Id.* at 129. The trial court's rationale was that Ramirez was not a threat to others and that Officer Knoulton shot Ramirez less than ten seconds after Ramirez stepped out of his vehicle. *Id.*

19.    The Fifth Circuit reversed finding the trial court failed to take into account the reasonable belief of the officers who were "standing yards away from a defiant, disturbed, and armed man." *Id.* at 130. Officer Knoulton did not violate the Fourth Amendment because it was reasonable for Officer Knoulton to fear for his life and the lives of fellow officers, even if Ramirez's gun was never pointed in the officers direction. *Id.* at 131.

20.    "**[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect**." *Garza*, 943 F.3d at 748 (quoting *Mullenix v. Luna*, 577 U.S. 7, 17 (2015)) (emphasis added). "[Courts] have never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 n.6 (5th Cir. 2016), as revised (June 16, 2016).

21.    In *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985) the Fifth Circuit held there is "no right is guaranteed by federal law that one will be free from circumstances where he will be endangered by the misinterpretation of his acts." The court found Young's movements, that the officer interpreted as Young reaching for a weapon, gave the officer reasonable cause to believe a threat of serious harm existed justifying the officer firing.

22.     The evidence proves Argueta's death did not result directly and only from use of unreasonable force that was clearly excessive to the need under the circumstances. *See Ontiveros*, 564 F.3d at 382. Officer Jaradi's actions were justified, objectively reasonable, and in compliance with the law and standard police training, policies, and procedures. Officers Jaradi and Larson initiated a traffic stop because Argueta was driving with his vehicle lights off, in violation of Texas Transportation Code §547.302. Any officer may arrest, without warrant, any person found violating the Texas Transportation Code. Tex. Transp. Code §543.001. "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769 (1996). Officer Jaradi had reasonable suspicion to stop Argueta and probable cause to arrest Argueta. [Exs. 2; 3; 4]. Argueta fled in violation of Texas Penal Code §38.04 (Evading Arrest or Detention) into darkness carrying a gun in his right hand. [Exs. 2; 3; 4 at ¶¶ 18, 28 3156, 3163, 6 at counter 1:54; 8; 13 at counter 1:05, 15, ll. 18-19]. Officer Jaradi commanded Argueta to stop but he didn't. [Exs. 2; 3; 4, Galveston_3156, 3165-66; 5, counter 1:52; 6, counter 1:53]. *See Garcia v. Blevins*, 957 F.3d 596, 601 (5th Cir. 2020), *cert. denied,* 141 S. Ct. 1058 (U.S. 2021).

23.     When Argueta moved his gun forward and away from his right side into a position from which only a slight motion of his hand would have resulted in his handgun being pointed directly at Officer Jaradi such that Officer Jaradi would not have had the ability to act in self-defense if he hesitated to take defensive action, Officer Jaradi reasonably fired to defend himself and Officer Larson. [Exs. 2; 3; 4, Galveston_3156; 5, counter 1:57; 6, counter 1: 59; 8, Galveston_194-95, 198].

24.     Officer Jaradi had to assess Argueta's actions, formulate, and execute reactions virtually immediately to Argueta's fleeing into a dark lot with a gun. [Ex. 4, Galveston_3161-79]. The presence of a law enforcement officer did not persuade Argueta to drop his gun and submit to custody, Argueta refused to comply with any command Officer Jaradi gave. [Exs. 2; 3; 4, Galveston_3156-59; 5, counter 1:54]; *Ramirez*, 542 F.3d at 131; *Garcia*, 957 F.3d at 602. Officer Jaradi knew from his training Argueta, who was approximately 15 feet away, could easily shoot him before he would be able to react if he waited until Argueta pointed the gun at him. [Exs. 2, 4, Galveston_3170]. Officer Jaradi's actions are what TCOLE instructors teach are appropriate in circumstances like those Officer Jaradi encountered. Under the force continuum, officers are taught through TCOLE that when an officer's life is in danger, lethal force is the appropriate defensive action to take. [Ex. 4, Galveston_3161, 3166-68, 3178-79].

25.     Argueta posed a threat of serious harm to the Officers physical safety and life. [Ex. 4, Galveston_3174]. Officer Jaradi took actions necessary to protect his life and the life of Officer Larson. [Ex. 4, Galveston_3168-79]. Any reasonable officer would believe Argueta posed a threat of serious harm to the officer and others. [Ex. 4, Galveston_3174-79]. Officer Jaradi did not use excessive force in violation of the Fourth Amendment and he is entitled to summary judgment. [Ex. 4, Galveston_3178-79]; *see Saucier*, 533 U.S. at 205.

>    **B.      Firing was lawful to stop Argueta from fleeing apprehension.**

26.     Alternatively, even if a genuine dispute existed regarding whether Officer Jaradi was justified in firing to defend himself and Officer Larson, Officer Jaradi's action was nonetheless lawful to stop Argueta from fleeing apprehension. In *Tennessee v. Garner*, 471

U.S. 1, 11-12 (1985), the Supreme Court held:

> [w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon [like the evidence proves Argueta did in this instance] or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

27.  Argueta fled from police into darkness toward homes armed with a deadly weapon. [Exs. 2; 3; 4, Galveston_3162-66, 25; 6, counter 1:54; 8, Galveston_213-14; 13, counter 1:05]. Argueta was capable of killing officers and other innocent people. [Ex. 4, Galveston_3163, 3177-79]. It is appropriate in the analysis of Officer Jaradi's reaction to Argueta's action "to take into account not only the number of lives at risk, but also their relative culpability." *See Scott v. Harris*, 550 U.S. 372, 384 (2007). Officer Jaradi did not violate the constitution when he shot Argueta because doing so was lawful to prevent Argueta's flight. [Ex. 4, Galveston_3163-66, 3174-77]; *Garner,* 471 U.S. at 11-12; *Thompson v. Mercer*, 762 F.3d 433, 440-41 (5th Cir. 2014).

## II. Plaintiffs failed to refute Officer Jaradi's immunity.

### A. Existing *legal authority* did not fairly warn Officer Jaradi that he was prohibited from responding in self-defense as he did to the deadly threat Argueta's actions presented.

28.  Even if Plaintiffs could identify evidence that raises a genuinely disputed question of material fact regarding whether a Fourth Amendment violation occurred, Plaintiffs have failed to disprove Officer Jaradi's presumed qualified immunity from suit.

> A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the

> plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's alleged wrongful conduct violated clearly established law.

*Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018).

29. "Qualified immunity protects officers from suit unless their conduct violates a clearly established right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). "For a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Shepherd*, 920 F.3d at 285 (quoting *Kisela v. Hughes*, __ U.S. __, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, __ U.S. __, 137 S. Ct. 548, 551 (2017)). "The Supreme Court has repeatedly told courts not to define clearly established rights 'at a high level of generality.'" *Shepherd*, 920 F.3d at 285 (quoting *Mullenix*, 577 U.S. at 24) (quotation marks and citation omitted).

30. "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'…Such specificity is especially important in the Fourth Amendment context[.]" *Shepherd*, 920 F.3d at 285 (citations omitted). Excessive force incidents are highly fact-specific and without cases squarely on point, officers receive the protection of qualified immunity. *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (PER CURIAM). To refute Officer Jaradi's immunity, Plaintiffs must demonstrate, through governing legal standards, the summary judgment evidence establishes no reasonable officer could have believed Officer Jaradi's response to the threat Argueta's actions presented was lawful. *See Saldana v. Garza*, 684 F.2d 1159, 1164-65 (5th Cir. 1982); *see Rivas-Villegas v. Cortesluna*, 211 L.Ed.2d 164, 168 (2021) (officer entitled to qualified immunity because plaintiff and court of appeals failed to identify a Supreme Court case that addressed

12

specifically similar facts). "The requirement that the law be clearly established is designed to ensure that officers have fair notice of what conduct is proscribed." *Brosseau*, 543 U.S. at 205. The bedrock of immunity is fair notice to every officer warning that particular conduct is clearly unlawful in the specific circumstances the officer encounters. *Id*.

31.     Plaintiffs fail to overcome Officer Jaradi's qualified immunity because caselaw at the time of the shooting does not clearly establish that Officer Jaradi's specific reaction to Argueta's action violates the Constitution or a law of the United States. *See Garcia*, 957 F.3d at 602; [Ex. 4, Galveston_3178-79]. Officer Jaradi is immune unless Plaintiffs "can identify a case [opinion] where an officer acting under similar circumstances…was held to have violated the Fourth Amendment," *White*, 137 S. Ct. at 551; *Vann*, 884 F.3d at 310; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017), and they cannot do so.

32.     In *Garcia v. Blevins*, Phillip Garcia, Jr. was shot and killed by Officer Blevins, who was working as a security guard at Bombshells Restaurant and Bar. *Garcia*, 957 F.3d at 598, Garcia and some friends got into an argument with other Bombshell patrons, resulting in Officer Blevins asking both groups to leave twice. *Id*. at 599. The fighting spilled into the parking lot and Garcia grabbed a gun. *Id.* The opponent group saw the gun and at least one man tried to rush Garcia. *Id.* Garcia then fled toward Bombshells. *Id.* Meanwhile, Officer Blevins was told by a patron that someone in the parking lot had a gun. *Id.* Officer Blevins called for backup, went outside, and saw Garcia with a gun. *Id.* Officer Blevins ordered Garcia to drop his gun. *Id.* Garcia ignored commands and walked between cars and re-emerged by the dumpster area. *Id.* Garcia stepped behind his friend and tried to get the friend to take the gun. *Id.* Garcia's friend refused, stepped away, and put his hands up.

*Id.* There were conflicting stories about what happened next, but it was undisputed that Garcia did not disarm. *Id.* Officer Blevins fired multiple shots, hitting Garcia multiple times, and Garcia died on his way to the hospital. *Id.* It was undisputed Garcia was aware of Officer Blevins presence, Garcia was ordered to put down his gun, and Garcia did not put down his gun. *Id.* The Fifth Circuit Court of appeals affirmed summary judgment on the basis of qualified immunity, without examining reasonableness, because any alleged violation was not clearly established at the time the shooting. *Id.* at 602.

33.     Like *Garcia*, *Ramirez,* and *Garza,* Officer Jaradi is protected by immunity because his use of deadly force in response to a dangerous situation with an armed and noncompliant suspect fleeing from known police presence was not clearly unlawful. *Id.*; *Ramirez*, 542 F.3d at 131; *Garza*, 943 F.3d at 748; *Mullenix*, 577 U.S. at 17; *Salazar-Limon*, 826 F.3d at 279 n.6. Controlling legal authorities supports Officer Jaradi's entitlement to immunity so the Plaintiffs cannot satisfy their burden to establish any violation of clearly established law. *White*, 137 S. Ct. at 551.

   **B.     Plaintiffs fail to identify *evidence* which would have informed every reasonable officer that Officer Jaradi's reaction to Argueta's precipitating criminal action was clearly unlawful.**

34.     The Court need not reach this separate ground that independently supports Officer Jaradi's immunity because no legal opinion provided fair notice to Officer Jaradi that his actions were clearly unlawful. *See Kisela*, 138 S. Ct. at 1152-54.

35.     Nevertheless, the record alternatively establishes a separate ground for Officer Jaradi's immunity. Only *after* a plaintiff identifies relevant clearly established law, does appropriate application of immunity entail a further determination of whether the protected

right allegedly violated, considering the **specific factual circumstances of the case**, was so clearly established in a particularized sense at the time Officer Jaradi acted, that **no objective officer** could have reasonably believed the challenged action was lawful. *Saucier*, 533 U.S. at 201-02; *Brosseau*, 543 U.S. at 198; *Mercer*, 762 F.3d at 440-41; *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *Ontiveros*, 564 F.3d at 385. "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). The "court must 'ask whether the law so clearly and unambiguously prohibited [the police officer's] conduct that every reasonable [police officer] would understand that what he is doing violates [the law].'" *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

36.     The evidentiary record in this case establishes that an objective officer could have reasonably believed Officer Jaradi's reaction to Argueta's actions was lawful in light of the apparent lethal threat to Officer Jaradi's life Argueta's actions posed. [Exs. 4, Galveston_3178-79; 11; 12]. Two independent agencies investigated Officer Jaradi's response and found he responded properly, with the grand jury returning "No Action." [Exs. 4, Galveston_3178-79; 11; 12]. All the evidence shows Officer Jaradi performed his duties in accordance with training provided to officers in the State of Texas through TCOLE. [Ex. 4, Galveston_3166, 3168-69, 3178-79]. As expert Captain Albert Rodriguez testified, Officer Jaradi's actions in defending himself, Officer Larson, and the public complied with accepted law enforcement training practices. [Ex. 4, Galveston_3159-79]. There is no accepted law enforcement officer standard applicable to the circumstances of

this case, which could have reasonably informed Officer Jaradi that his conduct would be deemed improper, and/or he violated any established law. [Ex. 4]. From a law enforcement officer training perspective, Officer Jaradi's actions were sound and in compliance with contemporary law enforcement training. [Exs. 4, Galveston_3168-79; 9]; *see* §I.A, *supra*. There is no evidence from any criminal justice professional which even suggests that Officer Jaradi's reaction to Argueta's criminal action was clearly unlawful.

## III.    The City did not violate Argueta's rights.

37.    "[U]nder §1983, local governments are responsible only for 'their own illegal acts.'" *Connick v. Thompson*, 560 U.S. 51, 60 (2011). A city is not vicariously liable for its employees' actions, even if they are unconstitutional. *Id.* To support a claim against the City, Plaintiffs must identify evidence of: (1) an unconstitutional policy; (2) an acceptance of an unconstitutional policy by the City's policymaker; and (3) the City's unconstitutional policy was the moving force that caused a deprivation of Argueta's federal rights. *See Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.) (en banc), *cert. denied*, 472 U.S. 1016 (1985); *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). "[Governmental] liability must be predicated upon a showing of 'fault,' not merely 'responsibility.'" *Bennett,* 728 F.2d at 767.

### A.    The City is entitled to judgment because Argueta was not deprived of any right.

38.    Argueta was not deprived of any protected right so the City is entitled to summary judgment. *See*; *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Rios v. City of Del*

*Rio*, 444 F.3d 417, 426 (5th Cir. 2006); *Saenz v. Heldenfels Bros.,* 183 F.3d 389, 392-393 (5th Cir. 1999).

**B.      There is no evidence of an unconstitutional City policy.**

39.      A City policy cannot be inferred from the allegations of an isolated alleged constitutional deprivation. *See Webster v. City of Houston*, 735 F.2d 838, 851 (5th Cir. 1984) (en banc). Municipal liability requires that unconstitutional conduct in question "be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. *Piotrowski v. City of Houston*, 237 F.3d 567, 578-81 (5th Cir. 2001). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997); *accord Pena v. City of Rio Grande City*, 879 F.3d 613, 621-23 (5th Cir. 2018).

**1.      City Council is the City's policymaker.**

40.      "The existence of official policymaking authority is a question of law to be decided by the court." *Tharling v. City of Port Lavaca*, 329 F.3d 422, 427 (5th Cir. 2003). "Usually a council or commission will be the governing body to which responsibility may be attached" *Bennett*, 728 F.2d at 767. State courts generally recognize that a city's council is customarily the policymaker for a city. *See City of San Antonio v. Rodriquez*, 856 S.W.2d 552 (Tex. App. — San Antonio 1993, writ denied). "It is fundamental that a municipal corporation possesses no power that is not conferred by its charter or by the general laws under which it was formed." *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d

17

602, 613 (Tex. App.—Corpus Christi 1998, pet. dism'd). "Liability must rest on official policy, meaning on the city government's policy, and not on the policy of an individual official." *Id*. at 55; s*ee also* Tex. Loc. Gov't Code Chapters 21 and 51.

41.     A city's charter and code of ordinances can serve as a source of substance law which identifies a city policymaker. *Id*.; *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008). A governing body "may delegate to others the right to perform acts and duties necessary to the transaction of the municipality's business... [but it] cannot delegate the right to make decisions affecting the transaction of city business." *Burch v. City of San Antonio*, 518 S.W.2d 540, 543 (Tex. 1975). A governmental employee is not a "policymaker" unless the governmental entity, through its lawmakers, has **delegated exclusive policymaking authority** to that employee such that the City cannot review the decisions or actions of the employee. *See Worsham*, 881 F.2d at 1340-41; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). "[P]olicymaking authority is more than discretion, and it is far more than the final say-so." *See Bennett*, 728 F.2d at 769. "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

42.     The City's Charter and Ordinances evidence the powers and duties of city officials, including the city manager, mayor, and chief of police. The Charter provides City Council with all powers and authority conferred on or possessed by the City, other than powers expressly conferred upon other City Officers by the Charter. The Charter expressly reserves to Council the power to inquire into the official conduct of any department, agency, office,

18

officer, or employee of the City, and into any other matters of proper concern to City government. The Council operates as a singular body and acts through ordinances. No Charter, Ordinance provision, or Resolution has delegated the City's policymaking authority to the Chief of Police. [Exs. 9, 10, 19].

43.     The police chief's operational authority is subordinate to Council's policymaking authority. The chief supervises the day-to-day operations of a department of the City, its police department, in conformance with policies established by Council and requirements of federal, state, and local law. The City has not delegated its policymaking authority to the chief. Neither the chief, nor any subordinate officer within the police department, has authority to enact City policy. [Exs. 9, 10, 19]. The evidence establishes the City's elected Council is the City's policymaker.

### 2.     City policy and police department regulations are facially constitutional.

44.     The Constitution provides protections from a governmental agency causing a constitutional deprivation but it does not effectively require a governmental entity to enact a transcendent policy that prevents law enforcement officers from using excessive force or making an arrest not supported by probable cause. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005); *Pineda v. City of Houston*, 291 F.3d 325, 333 (5th Cir. 2002).

45.     The evidence proves that as a matter of City policy, the City's Charter requires every police officer, before beginning his city duties, to take and subscribe to the police Oath of Office prescribed by the Constitution and laws of the State of Texas. Under the Oath, every officer is charged with faithfully executing police duties of the State of Texas, and preserve,

protect, and defend the Constitution and laws of the United States and of this State. [Exs. 9, 10, 19].

46.     Additionally, with the Counsel's limited authority, the City's chief of police has published a police department policy manual that contains provisions comparable to regulations utilized by other police departments in Texas. The regulations in the manual are more restrictive than governing law demands. Through the manual, the police department informs all officers of police department regulations. These regulations are adequate to provide the guidance necessary for the City's officers to perform the duties assigned to them. [Exs. 9, 10, 19].

47.     Among the regulations in the manual are those in § 200 which provide for reasonable use of force. An officer is permitted, under § 200, to use reasonable force necessary to accomplish a legitimate law enforcement purpose. This portion of the regulation essentially mirrors federal and state law. Subsection 200.4 of the manual authorizes an officer to use deadly force in two limited circumstances, both of which are applicable to this case. An officer may use deadly force to protect himself and others from what the officer reasonably believes would be an imminent threat of death or serious bodily injury, and an officer may use deadly force to stop a fleeing subject when the officer has probable cause to believe the person has committed, or intends to commit, a felony involving the infliction of or threatened infliction of serious bodily injury or death, and the officer reasonably believes there is an imminent risk of serious bodily injury or death if the subject is not immediately apprehended. [Exs. 9, 10, 19].

48.     In addition to police department regulations and the City Council's policy, which requires compliance with the police Oath of Office, there are also Texas laws with which all City officers must comply. The voters of the City of Galveston adopted Texas police civil service law which is currently codified in Chapter 143 of the Texas Local Government Code. Texas civil service statutes dictate competitive hiring and promotional standards for the City's officers. These laws provide procedures to discipline, demote, and/or discharge officers who commit proven misconduct. All officers, must abide by these civil service laws of the State of Texas. [Ex. 9]. City policy and police department regulations are facially constitutional.

49.     An adequate police training program must "enable officers to respond properly to the usual and recurring situations with which they must deal." *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992) (*quoting City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197 (1989)). Texas law dictates a level of police training provided through the Texas Commission on Law Enforcement (TCOLE) that far exceeds Constitutional requirements. This training provides appropriate officer instruction on lawful application of federal and Texas laws. [Exs. 4, 9, 19]. No federal court has held TCOLE training failed to meet constitutional requirements and many courts have held to the very contrary. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010); *Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000); *Roberts*, 397 F.3d at 293-95; *Baker v. Putnal*, 75 F.3d 190, 199-200 (5th Cir. 1996); *Benavides*, 955 F.2d at 973. Relevant City policy and police department regulations based on TCOLE standards are constitutionally adequate.

21

### 3. There is no evidence the City's policymaker was deliberately indifferent to Argueta's rights.

50.    "To establish [governmental] liability on the theory that a facially lawful [governmental] action has led an employee to violate [Argueta's] rights, [Plaintiffs] must demonstrate that the [governmental] action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 520 U.S. at 407. "[Governmental] liability must be predicated upon a showing of 'fault,' not merely 'responsibility.'" *Id*. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a [governmental policymaking] actor disregarded a known or obvious consequence of his action." *Id.* at 410. "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (internal citations omitted).

51.    "Deliberate indifference is a degree of culpability beyond mere negligence; it must amount to an intentional choice, not merely an unintentional oversight." *Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (quoting *James v. Harris County*, 577 F.3d 612, 617-18 (5th Cir. 2009)). Moreover, "[t]o base deliberate indifference on a single incident, 'it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy." *Alvarez*, 904 F.3d at 390 (quoting *Burge*, 336 F.3d at 373).

52.    There is no evidence the City's policymaker was deliberately indifferent to Argueta's rights. Each officer, including Officer Jaradi, is required as a condition of City

employment to comply with all TCOLE licensing and training standards. The courts have not held that compliance with TCOLE standards is unconstitutional, and the City's policymaker has no reason to believe that is the case. The City reasonably relies on the expertise of TCOLE in performing its function of providing well-qualified law enforcement officers. [Exs. 9, 19].

53.     The guidance available to appropriately direct officers does not end with TCOLE training. Texas criminal law prohibits all officers, including Officer Jaradi, from using unnecessary or excessive force or making a detention not supported by reasonable suspicion. Texas Penal Code §§ 9.51-9.54 governs law enforcement use of force. Considering the criminal laws, Officer Jaradi could not sensibly have believed the City's policymaker would, or could authorize Officer Jaradi to violate the Fourth Amendment. [Exs. 9, 19].

54.     Galveston officers, including Officer Jaradi, are also supervised to assure officers are appropriately guided to follow the law, City policy, and police department regulations. After Galveston police officers successfully complete training through a TCOLE certified police academy and also pass the Texas state peace officer examination, Galveston officers go through a program of on-the-job training called a field training officer (FTO) program. The Galveston police FTO program utilizes a method of instruction approved by TCOLE. In this segment of supplemental instruction, new officers are extensively supervised with experienced officers who have been specially trained through TCOLE to administer the FTO program. The FTO program consists of teaching components and testing components which require new officers to demonstrate their competence before the new officers are

permitted to perform their duties without direct supervision. The field training officers are supervised by field training supervisors to assure accountability and compliance with TCOLE standards. The City's policymaker has no reason to believe the Galveston FTO program is constitutionally deficient. [Exs. 9, 19].

55.     There are also several supervisory ranks within the City's police department which provide supervision of City officers. Supervisors must fulfill Texas civil service, and TCOLE, standards and earn promotions through a competitive process that requires experience, testing of competency on legal and professional knowledge, and demonstration of leadership skills. Section 200 of the departmental manual expressly provides for supervision of police force. Officers, thus, are aware that violation of law, City policy, and/or a departmental regulation subjects an offending officer to disciplinary action, including suspension, demotion or termination in appropriate circumstances.

56.     The City has no policy that directs, or authorizes, City officers to violate state or federal law or constitutional protections. The City demands through its policies, including the police Oath of Office, and police department regulations, that the City's officers comply with the requirements of the Constitutions and laws of the United States and Texas. The City's policymaker has no reason to believe any City policy or police departmental regulation that addresses Fourth Amendment issues is deficient or inadequate. [Exs. 9, 19].

> **4.     Stale allegations of former claims against other officers are no evidence of an existing City policy that caused a deprivation of Argueta's rights.**

57.     Assuming *arguendo*, the anecdotes of alleged events occurring years ago could reasonably be construed as pertinent allegations to show a City policy at issue in this case,

24

Plaintiffs' conclusory mere pleading allegations still cannot support a claim against the City. Plaintiffs have not provided any admissible evidence of an unconstitutional, or even inadequate City policy. *See Bennett*, 728 F.2d 767-68. The City is entitled to insist Plaintiffs clearly identify a specific policy for which the City's policymaker could be held liable, *Piotrowski*, 237 F.3d at 578-81, and Plaintiffs have no evidence to suggest otherwise.

58.    Plaintiffs alleged City "policy," of protecting officers by not disciplining or reporting those who commit use of force violations and target minorities, have no evidentiary support. *See* FED. R. EVID. 602, 611(a). The evidence, instead, proves that the City, Galveston County Sheriff's Office, and Galveston County District Attorney's Office thoroughly investigates all police shooting i9ncidents. [Exs. 9, 12, 19].

59.    Mere allegations of alleged complaints from years gone by well-prior to Argueta's death provide no support for the Plaintiffs' claims.[2] *See* FED. R. CIV. P. 56 and FED. R. EVID. 602, 611(a); *Bennett*, 728 F.2d 767-68. Illegal employee behavior cannot be assumed to have resulted from a City policy simply because a governmental policymaker defends an employee who is later found to have broken the law. *See Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986); *Davidson v. City of Stafford*, 848 F.3d 384, 395-96 (5th Cir.

---

[2]    Plaintiffs have not identified any judgment having been entered against the City of Galveston based on a City policy causing a police officer to use excessive force, and the public records are replete with judgments in favor of the City on such claims. *See Day v. Rogers*, 260 FED. APPX. 692, 695 (5th Cir. 2007); *Thompson v. City of Galveston*, 1998 U.S. App. LEXIS 39661 (5th Cir. 1998); *Baker*, 75 F.3d at 200; *Neu v. City of Galveston*, 2013 U.S. LEXIS 115306 (S.D. Tex. 2013); *Cruz v. City of Galveston*, 2012 WL 256 8159 (S.D. Tex. 2012); *Allen v. City of Galveston*, 2008 WL 905905 (S.D. Tex. 2008); *Mossey v. City of Galveston*, 94 F.Supp. 2d 793, 799 (S.D. Tex. 2000).

2017); *Fraire,* 957 F.2d at 1278. A plaintiff's mere disagreement with a city's conclusions regarding alleged misconduct does not necessarily support a claim against a governmental defendant in a §1983 suit. *Piotrowski*, 237 F.3d at 581-82.

60.     Patterns of past bad behavior "requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). Numerous incidents of similar bad acts does not necessarily support a pattern creating a policy. *See Id.* (27 excessive force complaints over three years was not sufficient for a pattern of excessive force); *Pineda*, 291 F.3d at 329.

61.     Simply, Plaintiffs allegations of unrelated and unsubstantiated complaints where Galveston police officers were allegedly not internally investigated from 2004-2014, and a case analyzing Galveston police policies in 2008 under a different City Council and different police chief is not evidence of a pattern in 2018. None of Plaintiffs' unsubstantiated allegations involve suspects holding a gun or who were shot by police.

62.     Plaintiffs allege Argueta was tracked by Officer Jaradi because of Argueta's race, yet evidence proves the stop was not racially motivated. Officer Jaradi did not initiate a traffic stop until he had reasonable suspicion and probable cause after witnessing Argueta violate Texas Transportation Code §547.302. [Exs. 2; 3; 4, Galveston_3155-56, 3162-63; 8, Galveston_202]; *Whren,* 517 U.S. at 810. There is no evidence to suggest Officer Jaradi's actions were racially motivated. [Exs. 2, 3, 5, 6, 13]. All evidence shows Argueta's stop was objectively based on his violation of the Texas Transportation Code and not his

26

race. *Whren*, 517 U.S. at 810; *Cole*, 444 F.3d at 689. City policy also forbids racial bias profiling. [Ex. 9]. Plaintiffs attempt to show a pattern that Galveston police do not investigate complaints, but two independent agencies investigated Officer Jaradi's shooting and found he did not use excessive force. [Exs. 4, Galveston_3178-79; 11; 12].

### C. No City policy was a moving force that directly caused a deprivation of Argueta's federal rights.

63.     Plaintiffs also fail to satisfy their burden to show a policy of the City's policymaker was the *moving force* that directly caused Argueta to suffer an injury. *See James v. Harris County*, 577 F.3d 612, 618-19 (5th Cir. 2009); *see* § III, *supra*. "[I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. Plaintiff[s] must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Bryan County*, 520 U.S. at 404. "In addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 579.

> This connection must be more than a mere 'but for' coupling between cause and effect. To form the basis of liability under § 1983, a **municipal policy must be affirmatively linked to the constitutional violation and be the moving force behind it**.

*Fraire*, 957 F.2d at 1281 (emphasis added).

64.     It is crucial that the requirements of governmental culpability and governmental causation "not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Piotrowski,* 237 F.3d at 579 (quoting *Snyder v. Trepagnier,* 142 F.3d 791, 798 (5th Cir. 1998)). The evidence irrefutably establishes that Argueta had a gun, putting the lives of

Officers Jaradi, Lawson, and witnesses in danger, and the shooting was investigated and cleared by two external departments. There is no evidence of any City policy that caused a violation of Argueta's rights or a policy to not investigate use of force incidents.

### IV.    Argueta's siblings lack standing and capacity to prosecute a claim.

65.    "Every action shall be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a); *Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236, 243 (5th Cir. 1993).

> Pursuant to 42 U.S.C. §1988, we must look to the state wrongful death statute to determine who has standing to bring a wrongful death claim under §1983. The Texas Wrongful Death and Survival Statutes, Tex. Civ. Prac. & Rem. Code §§ 71.004 and 71.021, set forth the parties who can bring suit.

*Aguillard v. McGowen*, 207 F.3d 226, 231 (5th Cir. 2000).

66.    Under the Texas Wrongful Death Act, an action for damages arising from a death shall be for the "exclusive benefit of the surviving spouse, children and parents of the deceased." TEX. CIV. PRAC. & REM. CODE §71.004. "[S]iblings are based on the plain language of the statutes, plainly not within the scope of the Texas Wrongful Death and Survivor Statutes." *Aguillard,* 207 F.3d at 231. Plaintiffs Santos Argueta and Blanca Granado are Argueta's parents. Argueta's siblings, Dora Argueta, Jelldy Argueta, and Tomas Argueta[3] lack standing and capacity to assert any claim. *See id*.

### V.    No Plaintiff has capacity to assert a claim through Texas survival statutes.

67.    Section 71.021 provides that "[a] personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." TEX. CIV. PRAC. & REM. CODE §71.021. Generally, "only the estate's personal representative has the capacity to

---

[3]    Plaintiffs stipulated to dismissal of Tomas Argueta's claims. Doc. Nos. 41, 42.

bring a survival claim." *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 850-51 (Tex. 2005). No Plaintiff has capacity to assert a claim under the Texas Survival Statute. For a legal heir to sue on behalf of an estate, the hear must prove 'there is no administration [of the estate] pending and no necessity for same and that they are the only heirs (or devisees) of the deceased." *De Aguilar v. Boeing Co*., 47 F.3d 1404, 1415 (5th Cir. 1995) *cert. denied*, 516 U.S. 865 (1995) (quoting *Lozano v. Smith*, 718 F.2d 756, 773 n.38 (5th Cir. 1983)). "Whether Texas law authorize[] [Plaintiffs] to maintain [a] survival action as [Argueta's] legal heir (i.e. whether administration is necessary) is tightly bound up with whether [Plaintiffs are] the estate's sole beneficiary and there are no creditors." *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 212 (5th Cir. 2016).

68.     Jelldy Argueta purportedly sues on behalf of Argueta's estate [Doc. 1, p. 3], but the evidence proves she lacks capacity to do so. [Ex. 1, p. 5]. Jelldy testified she does not know anything about Argueta's finances and is not involved in any proceedings for the administration of Argueta's estate. [Ex. 18, 25:1-5]. Likewise, Blanca Argueta also testified she does not know anything about Argueta's finances, if he had a bank account, if he had any assets, if he was ever married, or if he had any children. [Ex. 17. 32:10-22]. Blanca did not pay or handle any expenses surrounding Argueta's death. [Ex. 17, 38:6-13]. Further, Blanca was not involved in estate proceedings and not aware of anyone in her family being involved in any Argueta estate administration. [Ex. 17, 39:11-18]. The evidence shows there is no administration of Argueta's estate so no Plaintiff has authority to sue as the representative of Argueta's estate. *See Lovato*, 171 S.W.3d at 851.

69.     Additionally, none of the Plaintiffs have capacity to bring suit as heirs at law under the Texas Survival Statute because they have not appropriately pleaded or proven that administration of Argueta's estate is not necessary, or that they are the *only* heirs of the deceased. *See Aguillard,* 207 F.3d at 231; *Lovato*, 171 S.W.3d at 850-51. *Rodgers*, 819 F.3d at 212. All of Argueta's heirs have not resolved or reached an agreement regarding Argueta's estate disposition, and the Plaintiffs do not even know if Argueta's estate has debts or assets, or unidentified heirs exist. [Exs. 17, 18]. Because Plaintiffs have failed to prove probate of Argueta's estate is unnecessary and they are Argueta's sole legal heirs, Plaintiffs have not proven they have capacity to bring suit under the Texas Survival Statute as heirs at law. *Rodgers*, 819 F.3d at 212; *Aguillard,* 207 F.3d at 231.

## CONCLUSION AND PRAYER

70.     For each of these reasons, Defendants Officer Jaradi and the City of Galveston pray the Court dismiss Plaintiffs' lawsuit and enter summary judgment in Defendants' favor.

Respectfully submitted,

By:  *Norman Ray Giles*
William S. Helfand
Attorney-in-Charge
SBOT: 09388250
Southern District of Texas Bar No. 8791
Norman Ray Giles
SBOT: 24014084
Southern District of Texas Bar No. 26966

OF COUNSEL:

LEWIS BRISBOIS BISGAARD & SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: (713) 659-6767
Facsimile: (713) 759-6830
ATTORNEYS FOR DEFENDANTS

CERTIFICATE OF SERVICE

A true and correct copy of the foregoing has been forwarded to the following counsel of record in accordance with the District's ECF service rules on this 17th day of December, 2021.

Gene A. Watkins
gwatkins@shermanwatkins.com
Ellyn J. Clevenger
ellynclevenger@gmail.com
Attorneys for Plaintiffs

/s/ *Norman Ray Giles*