IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| SANTOS ARGUETA, et al. | § | |
| | § | CIVIL ACTION NO. 3:20-cv-00367 |
| *Plaintiff*, | § | |
| | § | Jury |
| v. | § | |
| | § | |
| CITY OF GALVESTON, et al. | § | |
| | § | |
| *Defendants.* | § | |

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants City of Galveston, Texas, and Officer Derrick Jaradi reply to Plaintiff's

response [Doc. 56] to Defendants' motion for final summary judgment [Doc. 43].

## TABLE OF CONTENTS

Table of Contents...............................................................................................................ii

Table of Authorities.........................................................................................................iv

Argument and Authorities .............................................................................................. 1

I.   There is no evidence Officer Derrick Jaradi used unreasonable force against Luis
     Argueta that violated the Fourth Amendment, and no legal authority that shows
     Officer Jaradi violated clearly established law. ........................................................ 1

     A.   Plaintiffs did not identify any evidence, legal authority, or even substantial
          argument, that shows it was objectively unreasonable for Officer Jaradi to
          shoot Argueta in the circumstances of this encounter............................................ 1

     B.   Plaintiffs did not identify any judicial decision, or other source of authoritative
          information, that informed every reasonable police officer that Officer Jaradi's
          reaction to the threat Argueta posed was clearly unlawful. ................................... 2

II.  The objective reasonableness of Officer Jaradi's decision to shoot Argueta is
     appropriately judged based on the circumstances at the moment of the threat that
     led Officer Jaradi to fire.......................................................................................... 3

III. Plaintiffs failed to refute Officer Jaradi's qualified immunity. ................................... 9

IV. The City of Galveston did not violate Argueta's rights.............................................. 11

     A.   The City is not liable because Argueta was not deprived of a federal right. ....... 11

     B.   The City Council is the City's Policy Maker ....................................................... 12

     C.   There is no evidence that supports a failure to train claim. ................................. 12

     D.   There is no evidence of an unconstitutional City policy...................................... 13

     E.   There is no evidence the City's policymaker was deliberately indifferent to
          Argueta'srights. .............................................................................................. 14

     F.   Plaintiffs failed to identify evidence that any City policy directly caused a
          deprivation of Argueta's federal rights. ............................................................. 14

V.   Jelldy Argueta lacks standing to prosecute a claim under the Texas Wrongful
     Death Statute.......................................................................................................... 15

VI. All Plaintiffs lack standing to bring a claim under the Texas Survival Statute.......... 16

Conclusion ................................................................................................................ 18

Certificate of Service ............................................................................................... 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Aguillard v. McGowen*,
  207 F.3d 226 (5th Cir. 2000) ..................................................................... 16

*Bazan v. Hidalgo Cty.*,
  246 F.3d 481 (5th Cir. 2001) ....................................................................... 6

*Board of County Commissioners v. Brown*,
  520 U.S. 397, 117 S. Ct. 1382 (1997) .................................................. 14, 15

*Brosseau v. Haugen*,
  543 U.S. 194, 125 S. Ct. 596 (PER CURIAM) ............................................ 10

*Carnaby v. City of Houston*,
  636 F.3d 183 (5th Cir. 2011) ....................................................................... 4

*City of Escondido v. Emmons*,
  139 S. Ct. 500 (2019) ................................................................................. 11

*County of Los Angeles v. Mendez*,
  137 S. Ct. 1539 (2017) ................................................................................. 5

*De Aguilar v. Boeing Co.*,
  47 F.3d 1404 (5th Cir. 1995) *cert. denied*, 516 U.S. 865 (1995) ................ 16

*District of Columbia v. Wesby*,
  138 S. Ct. 577 (2017) ................................................................................... 5

*Fields v. City of South Houston*,
  922 F.2d 1183 (5th Cir. 1991) ..................................................................... 4

*Fraire v. City of Arlington*,
  957 F.2d 1268 (5th Cir. 1992) ..................................................................... 4

*Gagne v City of Galveston*,
  805 F.2d 558 (5th Cir. 1986) ....................................................................... 4

*Garcia v. Blevins*,
  957 F.3d 596 (5th Cir. 2020), *cert. denied,* 141 S. Ct. 1058 (U.S. 2021) ............... 9, 10

*Graham v. Connor*,
  490 U.S. 386, 109 S. Ct. 1865 (1989) ............................................... 6, 7, 11

*Griffith v. Johnston*,
   899 F.2d 1427 (5th Cir. 1990) ...................................................................... 4

*Harris v. Serpas*,
   745 F.3d 767 (5th Cir. 2014) ........................................................................ 3

*James v. Harris County*,
   577 F.3d 612 (5th Cir. 2009) ...................................................................... 15

*Kisela v. Hughes*,
   138 S. Ct. 1148 (2018) ................................................................................ 11

*Lozano v. Smith*,
   718 F.2d 756 (5th Cir. 1983) ...................................................................... 16

*Mathews v. Luna*,
   25 F.3d 1044 (5th Cir. 1994) (unpublished) ................................................. 4

*McConney v. City of Houston*,
   863 F.2d 1180 (5th Cir. 1989) .................................................................... 13

*McGaughy v. City of Houston*,
   77 Fed. Appx. 280 (5th Cir. 2003) ............................................................... 4

*McKee v. City of Rockwall*,
   877 F.2d 409 (5th Cir.), *cert. den'd*, 493 U.S. 1023 (1990) .................. 11, 12

*Munoz v. State Farm Lloyds*,
   No. B-04-141, 2005 U.S. Dist. LEXIS 63006 (S.D. Tex. 2005) ................ 16

*Ontiveros v. City of Rosenberg*,
   564 F.3d 379 (5th Cir. 2009) ............................................................... 1, 2, 4

*Pfannstiel v. City of Marion*,
   918 F.2d 1178 (5th Cir. 1990) ...................................................................... 4

*Ramirez v. Knoulton*,
   542 F.3d 124 (5th Cir. 2008) ..................................................................... 3, 9

*Rios v. City of Del Rio*,
   444 F.3d 417 (5th Cir. 2006) ...................................................................... 11

*Rivas-Villegas v. Cortesluna*,
   211 L.Ed.2d 164 (2021) .............................................................................. 10

*Rockwell v. Brown*,
    664 F.3d 985 (5th Cir. 2011) ................................................................... 3

*Saldana v. Garza*,
    684 F.2d 1159 (5th Cir. 1982) ............................................................... 10

*Shepherd v. City of Shreveport*,
    920 F.3d 278 (5th Cir. 2019) ............................................................. 3, 10

*Tennessee v. Garner*,
    471 U.S. 1, 105 S. Ct. 1694 (1985) ................................................... 10, 11

*Terry v. Ohio*,
    392, U.S. 1, 22, 88 S. Ct. 1868 (1968) .................................................... 5

*Turner v. Upton County*,
    915 F.2d 133 (5th Cir. 1990) ................................................................ 13

*United States v. Sokolow*,
    490 U.S. 1, 109 S. Ct. 1581 (1989) ......................................................... 5

*Vann v. City of Southaven*,
    884 F.3d 307 (5th Cir. 2018) ............................................................... 2, 3

*White v. Pauly*,
    137 S. Ct. 548 (2017) .......................................................................... 11

*Young v. City of Killeen*,
    775 F.2d 1349 (5th Cir. 1985) ............................................................. 4, 6

**State Cases**

*Austin Nursing Ctr. v. Lovato*,
    171 S.W.3d 845 (Tex. 2005) ................................................................ 16

**Constitutions**

Fourth Amendment ............................................................ 1, 2, 4, 9, 10, 11

**Statutes**

42 U.S.C. § 1988 ..................................................................................... 16

Tex. Civ. Prac. & Rem. Code § 71.004 ..................................................... 16

Tex. Civ. Prac. & Rem. Code § 71.021 ..................................................... 16

Texas Code of Criminal Procedure Article 14.01 ................................................................ 4

Texas Penal Code § 38.04 .................................................................................. 6, 7, 8

Texas Wrongful Death Act .................................................................................. 16

**Court Rules**

Fed. R. Civ. P. 17(a) ........................................................................................ 16

ARGUMENT AND AUTHORITIES

**I.      There is no evidence Officer Derrick Jaradi used unreasonable force against Luis Argueta that violated the Fourth Amendment, and no legal authority that shows Officer Jaradi violated clearly established law.**

**A.     Plaintiffs did not identify any evidence, legal authority, or even substantial argument, that shows it was objectively unreasonable for Officer Jaradi to shoot Argueta in the circumstances of this encounter.**

# "a tie, you die, you know"

1.      Thirteen years ago, in *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 384 n.2 (5th Cir. 2009), the Fifth Circuit Court evaluated the reasonableness of a police shooting case and the circuit court quoted from Texas Ranger Jeff Cook's deposition testimony in explaining the significance of the scientific principle of *action* versus *reaction* in the context of evaluating the objective reasonableness of police conduct. In his deposition, Ranger Cook provided testimony regarding how and why police officers are trained they must fire to stop a deadly threat before a suspect aims a gun at an officer. Ranger Cook testified that if an officer hesitates too long and thus fires too late to accomplish defensive action, the best an officer can do is tie the suspect, then the suspect and officer are both shot. The last question Ranger Cook answered was "[i]s a tie good enough in this work?", to which Ranger Cook testified "a tie, you die, you know."

2.      Through the *Ontiveros* decision and police training provided through the Texas Commission on Law Enforcement (TCOLE) every reasonable officer in Texas knows the significance of the scientific principle of action versus action when reacting to a potential deadly threat from a suspect armed with a firearm. [Doc. 43-4. pp. 6, 20-26]. Law enforcement training expert, Captain Albert Rodriguez, provided extensive unrebutted

1

testimony regarding how law enforcement officers are trained and why officers are trained as they are. Captain Rodriguez's testimony proves that Officer Jaradi reacted to the deadly threat Argueta's actions presented in a manner that was consistent with training all Texas police officers receive through instruction approved by the Texas Commission on Law Enforcement.

3.      In their "response" to Defendants' summary judgment, Plaintiffs did not even mention, much less respond to, the evidence Captain Rodriguez provided, the significance of the principle of action versus reaction, or the *Ontiveros* precedent or rationale. The unrefuted evidence, and legal authority, regarding these issues prove that Officer Jaradi did not violate use excessive force that violated the Fourth Amendment and did not violate clearly established law that divested him of qualified immunity. Plaintiffs simply failed to respond, with evidence or authorities, to the relevant issues.

> **B.      Plaintiffs did not identify any judicial decision, or other source of authoritative information, that informed every reasonable police officer that Officer Jaradi's reaction to the threat Argueta posed was clearly unlawful.**

4.      Additionally, Plaintiffs bear the burden of refuting Officer Jaradi's immunity, but they have not done so. *See Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018). The summary judgment record establishes that Officer Jaradi is entitled to summary judgment based on his qualified immunity because Plaintiffs failed to identify any judicial decision, or other source of authoritative information, that informed every reasonable officer that Officer Jaradi's reaction to the deadly threat Argueta posed was clearly

2

unlawful. As in *Vann*, "[i]n the district court, [plaintiff] cited nary a pre-existing or precedential case. That alone dooms his case here." *Vann*, 876 F.3d at 144.

## II.   The objective reasonableness of Officer Jaradi's decision to shoot Argueta is appropriately judged based on the circumstances at the moment of the threat that led Officer Jaradi to fire.

5.      Although Plaintiffs' failure to refute the grounds demonstrating Defendants' entitlement to summary judgment addressed in § I of this brief is dispositive of the claims in the case, nonetheless Defendants will reply to the various rabbit trails Plaintiffs venture down. "In this circuit, 'the excessive force inquiry is confined to whether the officer was in danger **at the moment of the threat that resulted in the officer's shooting**. Therefore, any of **the officers' actions leading up to the shooting are not relevant**[.]'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (emphasis added) (quoting *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014)); *accord Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011).

6.      Instead of substantively responding to the reasonableness of Officer Jaradi's reaction to the deadly threat Argueta's actions presented that led to the shooting, Plaintiffs make specious arguments regarding different subjects premised on the contention Officer Jaradi should not have approached Argueta at all. But Plaintiffs' arguments fail because "[e]ven where an officer acts negligently and contrary to police procedure, [the Fifth Circuit] court has failed to recognize a constitutional claim where an officer used deadly force in response to a reasonable belief that an individual posed a threat of serious harm." *Ramirez v. Knoulton*, 542 F.3d 124, 130 (5th Cir. 2008). Accordingly, Plaintiff's arguments Officer Jaradi's tactics or alleged violation of police procedures preceding the instant of

3

the threat that prompted the shooting are simply irrelevant for determining whether force used violated the Fourth Amendment or clearly established law. *Compare*, *Carnaby v. City of Houston*, 636 F.3d 183, 188 (5th Cir. 2011) (deadly force may be proper regardless of an officer's negligence if, at the moment of the shooting, he was trying to prevent serious injury or death); *Ontiveros*, 564 F.3d at 383; *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) (negligent departure from established police procedure does not necessarily signal violation of constitutional protections); *Young v. City of Killeen*, 775 F.2d 1349, 1351 (5th Cir. 1985) (negligence contrary to police procedure).

7.      Whether Officer Jaradi complied with any standard other than the Fourth Amendment objective reasonableness standard and relevant clearly established federal law applicable in this case, is legally irrelevant in the Court's evaluation of Defendants' summary judgment motion. *See Davis v* Scherer, 468 U.S. 183, 194 (1984); *Gagne v City of Galveston*, 805 F.2d 558, 560 n.2 (5th Cir. 1986); *Griffith v. Johnston*, 899 F.2d 1427, 1435-36 (5th Cir. 1990); *Mathews v. Luna*, 25 F.3d 1044 (5th Cir. 1994) (unpublished); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). This extends to Officer Jaradi's alleged non-compliance with Texas criminal procedure laws, including Article 14.01 of the Texas Code of Criminal Procedure which creates state law requirements for arrest that exceed the Fourth Amendment standard that governs the claims in this case. *See Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991); *McGaughy v. City of Houston*, 77 Fed. Appx. 280, 281 (5th Cir. 2003).

8.      Contrary to the governing authorities Defendants cited in ¶¶ 5-7 *supra*, Plaintiffs urge this Court to evaluate the reasonableness of Officer Jaradi's decision to shoot Argueta

based on irrelevant arguments that Officer Jaradi should not have approached Argueta. The Supreme Court has expressly rejected this proposition. *See County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546-1549 (2017).

9.      The first 42 pages of Plaintiffs' brief consists of factually unsupported and legally irrelevant arguments regarding extraneous matters *before* Argueta fled from his vehicle holding a pistol in his hand. [Doc. 56, pp. 1-42]. Plaintiffs ask this Court to base its evaluation of the reasonableness of Officer Jaradi's reaction to Argueta's threat on arguments and events *unrelated* to, and *far-removed* from, the shooting. *Id* at p. 51. Plaintiffs misdirect the Court to Luna's subjective perceptions upon first seeing officers inside the police vehicle, and throughout their brief Plaintiffs claim various of Argueta's actions well-before the shooting occurred were "innocent conduct" at the convenience store. [Doc. 56, pp. 51-53]. However, Supreme Court "precedents recognize that the whole is often greater than the sum of its parts – especially when the parts are viewed in isolation." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2017); *see also United States v. Sokolow*, 490 U.S. 1, 9, 109 S. Ct. 1581 (1989); and *Terry v. Ohio*, 392, U.S. 1, 22, 88 S. Ct. 1868 (1968). "A factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality." *Id*. at 589. The "kind of divide-and-conquer approach [Plaintiffs' urge] is improper." *See id*. Instead, evaluating the reasonableness of Officer Jaradi's decision to fire "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989).

10.   Plaintiffs argue purported inconsistencies surrounding the reasonable suspicion for the initial stop. [Doc. 56, at p.53]. Plaintiffs claim there is a dispute as to whether Argueta had his headlights activated prior to the stop, whether Argueta made a complete stop at two stop signs, and whether Argueta was traveling at a high rate of speed before Officer Jaradi activating his patrol lights. *Id.* None of these purported inconsistencies, even if supported in the evidence, are relevant to the reasonableness factors set forth in *Graham* and its progeny. *See Graham*, 490 U.S. at 396. Plaintiffs appear to confuse the first *Graham* factor—the severity of the crime—with the separate and distinct doctrine of reasonable suspicion to initiate a traffic stop. [Doc. 56, at p. 52].

11.   The excessive force inquiry, however, is confined to whether Officer Jaradi was in danger *at the moment of the threat* that resulted in Officer Jaradi shooting Argueta. *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 493 (5th Cir. 2001). "Regardless of what had transpired up until the shooting itself, [the suspect's] movements gave the officer reason to believe, at that moment, that there was a threat of physical harm." *Bazan* 246 F.3d at 493 (citing *Young,* 775 F.2d at 1353. Thus, attenuated events that transpired before Argueta left his vehicle holding a deadly weapon are irrelevant to the reasonableness of the shooting. Here, the *relevant* crime and its severity—evading arrest or detention in violation of Texas Penal Code § 38.04 while armed with a deadly weapon, that Argueta was committing when he was shot is a proper subject of inquiry. *Id.*

12.     Moreover, the Plaintiffs' argument regarding the justification for the stop is disproven in the recorded and testimonial evidence, including deposition testimony from Argueta's girlfriend. [Doc. 56, exhibit 3, p. 42, ll. 8-10]. Argueta evaded arrest in a vehicle when he continued to drive numerous blocks and failed to stop at two stop signs after Officer Jaradi activated his patrol lights to initiate the traffic stop. *See* Texas Penal Code § 38.04(b)(2)(A); [Doc. 43-2; 43-3; 43-5 at counter 1:23; 43-6 at counter 1:26; 44-2 at counter 0:37; and 44-4 p. 40, ll. 24-25– p. 42, ll. 1-11]. Officer Jaradi transmitted over the radio Argueta was not stopping. [Doc. 43-2; 43-3; 43-4 at ¶ 18; and 44-4 at p. 43, ll. 15-17]. As soon as Argueta stopped his vehicle, Argueta got out of the vehicle and ran across the street, in violation of Texas Penal Code §38.04 (Evading Arrest or Detention). [Doc. 43-2; 43-3; 43-4 at ¶¶ 18 and 28; 43-6 at counter 1:54; 44-2 at counter 1:05-10; 44-4 at p. 40, ll. 18-28, and p. 43, ll. 1-10].

13.     Regarding the second *Graham* factor—whether Argueta posed an immediate threat to the safety of the officers or others, Plaintiffs blatantly misquote Officer Jaradi's testimony in an improper attempt to avoid the obvious threat Argueta posed with the gun in his hand. Plaintiffs' misrepresentation of the evidence approaches sanctionable conduct.

14.      Plaintiffs' state Officer "Jaradi admitted he had not seen a gun, and was not in fear for his life" in their response to presumably create a fact issue where none exists. [Doc. 56, at p.53]. The evidentiary record proves otherwise. Officer Jaradi testified numerous times at his deposition, and in his declaration, that he saw Argueta's handgun before he fired. [Doc. 44-4, at p. 44 ll. 14-25, p. 45 ll. 18-21, p. 46 ln. 1, p. 46 ll. 23-25, and p. 47 ll. 1-5]. Officer Jaradi further testified that *prior* to firing, he feared for his and Officer Larson's

life. [Doc. 44-4, at p. 47, ll. 3-8]. Thus, Plaintiffs uncited and unsupported statement wherein they claim Officer "Jaradi admitted he had not seen a gun, and was not in fear for his life" is patently false.

15.    Argueta, while holding his right arm and hand down to his side as if to conceal something from officers, ran diagonally toward Officer Jaradi. *Id.* Officer Larson exited the police vehicle to pursue Argueta. [Doc. 43-2; 43-3; 43-4 at ¶ 18; 43-6 at counter 1:53; and 44-2 at counter 1:07]. Officer Jaradi also exited the vehicle. [Doc. 43-2; 43-3; 43-4 at ¶ 18; 43-5 at counter 1:52; 44-4 at p. 43 ll. 18-25, and p. 44 ll. 1-10]. Officer Jaradi saw Argueta's gun and shouted for Argueta to get down on the ground. [Doc. 43-2; 43-3; 43-4 at ¶ 21; 43-5 at counter 1:54; 44-4 at p. 44 ll. 11-23, p. 46 ln. 12 to p. 47 ln. 22, and p. 51 to 54]. Three independent witnesses heard Argueta's command before a shot was fired. [Doc. 43-4 at ¶¶ 30-32]. When Argueta failed to comply with police commands and Argueta continued to run, Officer Jaradi, who was trained regarding action versus reaction, shot Argueta, who was then armed only 15 feet from Officer Jaradi. [Doc. 43-2; 43-3; 43-4 at ¶¶ 19-22, 67-70; 43-5 at counter 1:57; 43-6 at counter 1:59; 44-4 at p. 47 ll. 3-18]. Argueta fell onto the ground, still holding a gun[1] in his right hand. [Doc. 43-2; 43-3; 43-4 at ¶¶ 22-23; 43-5 at counter 1:59, 43-6 at counter 2:05]. Officer Jaradi shouted for Argueta to put his hands up, drop the gun and not to reach for it. [Doc. 43-2; 43-3; 43-4 at ¶ 23; 43-5 at counter 1:58; and 43-6 at counter 2:06]. Argueta did not comply. [Doc. 43-4 at ¶ 23;

---

[1]    Argueta's gun was a Glock model 21 .45 caliber pistol with a magazine extension, capable of holding thirty rounds of ammunition. [Doc. 43-4 at ¶ 28].

and 43-5 at counter 2:07]. Officer promptly Jaradi called for EMS. [Doc. 43-2; 43-3; 43-4 at ¶ 23; and 43-5 at counter 2:08].

16.     This evidence demonstrates the reasonableness of Officer Jaradi's reaction to the lethal threat Argueta's criminal actions. Officer Jaradi was required to assess Argueta's actions, formulate, and execute reactions in the seconds Argueta ran in the darkness, gun in hand. [Doc. 43-4, at attachments 1-5]. The presence of officers did not persuade Argueta to drop his gun, Argueta failed to comply with Officer Jaradi's commands. [Doc. 43-2; 43-3; 43-4 at Galveston_3156 to Galveston_3159; and 43-5 at counter 1:54]; *Ramirez*, 542 F.3d at 131; *Garcia*, 957 F.3d at 602. Officer Jaradi knew from his training Argueta, who was approximately 15 feet away, Argueta could easily shoot Officer Jaradi before he could react to protect himself if he waited longer to fire. [Doc. 43-2, and 43-4 at Galveston_3170]. Argueta posed a threat of serious harm to the officers' physical safety and life. [Doc. 43-4 at Galveston_3174]. Officer Jaradi took actions necessary to protect his life and Officer Larson's life. [Doc. 43-4 at Galveston_3168-Galveston_3179]. Any reasonable officer would believe Argueta posed a threat of serious harm to the officer and others. [Doc. 43-4 at Galveston_3174-Galveston_3179]. Officer Jaradi did not use excessive force in violation of the Fourth Amendment and Plaintiffs have failed to identify a genuinely disputed material fact which precludes summary judgment. [Doc. 43-4 at Galveston_3178-Galveston_3179].

### III.     Plaintiffs failed to refute Officer Jaradi's qualified immunity.

17.     To refute Officer Jaradi's immunity, Plaintiffs must demonstrate, through governing legal standards, evidence which proves that no reasonable officer could have believed

lawful Officer Jaradi's reaction to the threat Argueta's actions presented. *See Saldana v. Garza*, 684 F.2d 1159, 1164-65 (5th Cir. 1982); *Rivas-Villegas v. Cortesluna*, 211 L.Ed.2d 164, 168 (2021) (officer entitled to qualified immunity because plaintiff and court of appeals failed to identify a Supreme Court case that addressed specifically similar facts). "The requirement that the law be clearly established is designed to ensure that officers have fair notice of what conduct is proscribed." *Brosseau v. Haugen*, 543 U.S. 194, 205 (PER CURIAM). The bedrock of immunity is fair notice to every officer warning that particular conduct is clearly unlawful in the specific circumstances the officer encounters. *Id*.

18.     No judicial decision clearly established that Officer Jaradi's reaction to Argueta's action violated federal law. *See Garcia v. Blevins*, 957 F.3d 596, 602 (5th Cir. 2020), *cert. denied,* 141 S. Ct. 1058 (U.S. 2021). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'…Such specificity is especially important in the Fourth Amendment context[.]" *Shepherd*, 920 F.3d at 285 (citations omitted). Excessive force incidents are highly fact-specific and **without cases squarely on point**, officers receive the protection of qualified immunity. *Brosseau v. Haugen*, 543 U.S. 194, 201, 125 S. Ct. 596  (2004) (PER CURIAM) (emphasis added).

19.     Plaintiff cites only *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694 (1985), and Plaintiff fails to describe how *Garner* established that no reasonable officer could have believed Officer Jaradi's response to the threat Argueta's actions presented was lawful. This argument fails, as a matter of law, first because the Supreme Court has held that *Garner* and *Graham* do not by themselves create clearly established law. See *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Those cases are "cast at a high level of generality." *Id*.

"Specificity is especially important in the Fourth Amendment context…Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, __ U.S. __, 138 S. Ct. 1148, 1153 (2018)).

20.     Moreover, *Garner* supports judgment in favor of the Defendants. In *Garner* at 4*,* even though the suspect was fleeing away from the officer, the officer shot the suspect for the purpose of apprehending the suspect after the officer had seen the suspect's face and hands and the officer admitted he had not seen any sign of a weapon. Under *Garner*, because Officer Jaradi had probable cause to believe that Argueta, who was non-compliant and armed with a firearm, Argueta posed a threat of serious physical harm to Officers Jaradi and Larson. *Id.* Certainly, *Garner* did not establish that no reasonable officer could have believed Officer Jaradi's response to the threat Argueta's actions presented was lawful. Plaintiffs failed to identify evidence that existing legal authority prohibited Officer Jaradi's use of reasonable force in self-defense when confronted with an armed and uncompliant Argueta.

## IV.     The City of Galveston did not violate Argueta's rights.

### A.     The City is not liable because Argueta was not deprived of a federal right.

21.     Because Argueta was not deprived of a federal right, the City cannot be liable. *See Rios v. City of Del Rio*, 444 F.3d 417, 426 (5th Cir. 2006); *McKee v. City of Rockwall*, 877 F.2d 409, 414 (5th Cir.), *cert. den'd*, 493 U.S. 1023 (1990).

### B.   The City Council is the City's Policy Maker

22.   Here, despite clear evidence to the contrary, Plaintiffs make a conclusory allegation that the chief of police is the City's policymaker in an attempt to make a vague connection to a 2008 lawsuit, but over the 14 years since that lawsuit the City has had several different City Councils and several different police chiefs.

23.   There is no evidence that City has delegated its policymaking authority to police chief Vernon Hale. In his declaration, he testified that the City has not delegated its policymaking authority to him. Neither the chief, nor any subordinate officer within the police department, has authority to enact City policy. [Doc. 43-9; 43-10; and 44-8]. The evidence establishes the City's elected Council is the City's policymaker.

### C.   There is no evidence that supports a failure to train claim.

24.   Plaintiffs' attempt to impose liability on the City for its alleged "failure to train, and deficient policies, which caused the secreting of evidence from an investigation (preventing the finding of violations and underreporting)." [Doc 56, at p. 58]. Plaintiffs claim the City failed to train Officer Larson and Officer Jaradi regarding the use of body cameras and patrol unit dash cameras. [Doc. 56, at p. 71]. As a result of improper training as the argument goes, Plaintiffs claim Officer Jaradi willfully ignored the City's written policy requiring the activation of the Mobile Video Recording system (MVR or "Dash Cam") in the event of a vehicular pursuit or when viewing a suspicious vehicle thus preventing the recording of footage as early as when Officer Jaradi first viewed Argueta at the convenience store. *Id.* Plaintiffs contend the *absence* of a City policy instructing Officers when to activate their cameras or cease recording allowed Galveston Police Officers to turn

off their body cameras *after* Argueta was transferred to the hospital from the scene thus concealing "a violation of a citizen's constitutional rights." [Doc. 56, at p. 60.].

25.     Assuming *arguendo* any record evidence supported the assertion the City had a policy of failing to train officers in how to use recording equipment, there is no evidence that such a policy was the moving force that directly cause Officer Jaradi to shoot Argueta. The evidence proves that recordings from Officer Jaradi's police vehicle and from the body-worn-camera Officer Jaradi wore when he shot Argueta exist and are in the summary judgment record. Whether additional recordings could have been of events that occurred before Argueta exited his vehicle holding a firearm, or after Officer Jaradi shot Argueta, is inconsequential. Additionally, there is no evidence that Officer Jaradi or Officer Larson received no recording training, and no evidence the City's policymaker was deliberately indifferent to a known need for recording training that was not provided to officers. Also, there is no evidence that the City's recording policy was the moving force that directly cause Officer Jaradi to shoot Argueta. Plaintiffs' argument is ridiculous.

**D.      There is no evidence of an unconstitutional City policy.**

26.     Plaintiffs' allegation Officer Jaradi violated city policy 304.3 requiring the activation of his patrol lights when he first viewed a suspicious vehicle—thus triggering the patrol unit dash cam, fails for similar reasons as the failure to train about recordings. The premise of Plaintiffs' argument refutes the assertion the City has a facially deficient policy in this regard. A governmental employee's failure to comply with City policy does not establish city liability. *See Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990); *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). There is no evidence

13

which shows that such a policy even exists, and certainly no evidence the City's policymaker was deliberately indifferent in maintaining such a policy, or that this purported policy was a moving force that directly cause Officer Jaradi to shoot Argueta.

### E.    There is no evidence the City's policymaker was deliberately indifferent to Argueta's rights.

27.    Plaintiffs fail to address Defendants' argument and the evidence which establishes shows there is no evidence that the City's policymaker was deliberately indifferent to Argueta's rights. [Doc. 56]. "To establish [governmental] liability on the theory that a facially lawful [governmental] action has led an employee to violate [Argueta's] rights, [Plaintiffs] must demonstrate that the [governmental] action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of County Commissioners v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382 (1997).

### F.    Plaintiffs failed to identify evidence that any City policy directly caused a deprivation of Argueta's federal rights.

28.    Plaintiffs offer only conclusory statements but no evidence that a City policy was the moving force that directly caused a deprivation of Argueta's federal rights. Plaintiffs argue "[t]he Department's policy for bodycam videos which existed in 2018 represents a policy and practice which worked deprive decedent of his constitutional rights." [Doc. 56, at p. 27]. But even if any evidence existed which showed that such a policy existed, Plaintiffs identify no evidence to support their theory a recording policy cause Officer Jaradi to shoot Argueta. "[I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. Plaintiff[s] must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged."

14

*Bryan County*, 520 U.S. at 404. In other words, a plaintiff must show direct causation, i.e., that there was "a direct causal link" between the policy and the violation. *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009).

29.     To avoid summary judgment on its theory, Plaintiffs were required to prove that Officer Jaradi knew of the purported "policy" that allegedly encouraged Officers to "conceal evidence" by failing to instruct them to leave their body camera's on after an incident—and armed with that knowledge, and that Officer Jaradi shot and killed Argueta because of the recording policy. No such evidence appears in the summary judgment record. Notwithstanding any events taking place *after* the shooting are completely irrelevant to this analysis, the evidence is clear that the events before and during the shooting are recorded on several cameras, thus destroying any purported "cover up" of evidence. *Supra* PP.9-13.

30.     Similarly, Plaintiffs' argument that Officer Jaradi ignored the City's written policy requiring the activation of patrol unit dash cam in the event of a vehicular pursuit or when viewing a suspicious vehicle, fails to illustrate any causal connection between the policy and purported violation of Argueta's rights. Regardless of whether Officer Jaradi adhered to the policy, Plaintiffs offer no explanation on how the policy (presumably allowing Officer Jaradi to capture earlier video evidence) led to the purported use of excessive force. At best, adherence to the policy would prevent any deprivation of Argueta's rights as opposed to causing a deprivation of his rights.

   **V.     Jelldy Argueta lacks standing to prosecute a claim under the Texas Wrongful Death Statute.**

31.     "Every action shall be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a). Pursuant to 42 U.S.C. §1988, courts look to the state wrongful death statute to determine who has standing to bring a wrongful death claim under §1983. The Texas Wrongful Death and Survival Statutes, Tex. Civ. Prac. & Rem. Code §§ 71.004 and 71.021, set forth the parties who can bring suit. *Aguillard v. McGowen*, 207 F.3d 226, 231 (5th Cir. 2000). Under the Texas Wrongful Death Act, an action for damages arising from a death shall be for the "exclusive benefit of the surviving spouse, children and parents of the deceased." TEX. CIV. PRAC. & REM. CODE §71.004.

32.     Plaintiffs concede Jelldy Argueta, the sibling of Argueta, lacks standing to bring a wrongful death claim. [Doc. 56, at p. 62]. Plaintiffs Santos Argueta and Blanca Granado—Argueta's parents, are the only remaining parties with proper standing to assert a wrongful death claim. *Id.*

## VI.    All Plaintiffs lack standing to bring a claim under the Texas Survival Statute.

33.     Section 71.021 provides that "[a] personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." TEX. CIV. PRAC. & REM. Code §71.021. Generally, "only the estate's personal representative has the capacity to bring a survival claim." *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 850-51 (Tex. 2005). For a legal heir to sue on behalf of an estate, the heir must prove 'there is no administration [of the estate] pending and no necessity for same and that they are the only heirs (or devisees) of the deceased." *De Aguilar v. Boeing Co*., 47 F.3d 1404, 1415 (5th Cir. 1995) *cert. denied*, 516 U.S. 865 (1995) (quoting *Lozano v. Smith*, 718 F.2d 756, 773

16

n.38 (5th Cir. 1983)).

34.    Plaintiffs argue Jelldy Argueta has standing to bring an action as Argueta's estate representative based on an affidavit executed on February 21, 2022. [Doc. 56-1]. This sham affidavit states "[m]y family members and I came to an agreement, prior to filing this lawsuit, that I should be the administrator or executrix, in the event that any judicial process may become necessary due to this lawsuit.  [Doc. 56-1]. Jelldy Argueta's sham affidavit contains information that is inconsistent with her deposition testimony, the deposition testimony of the other plaintiffs, and plaintiffs' interrogatory response [Doc. No. 43-1, answer 6], therefore it is not competent summary judgment evidence. At her deposition on December 06, 2021, Jelldy Argueta testified she had no knowledge of Argueta's finances and was not involved in any proceedings for the administration of Argueta's estate. [Doc. 44-7 at p. 25, ll. 1-5]. In plaintiffs' interrogatories, plaintiffs say they plan to initiate judicial estate proceedings. [Doc. No. 43-1, answer 6].

35.    To warrant exclusion, an affidavit must directly contradict another affidavit or a deposition, and it must do so in a sufficiently egregious manner to establish that thee affidavit was in fact a "sham," intended merely to prevent summary judgment from being established. *Munoz v. State Farm Lloyds*, No. B-04-141, 2005 U.S. Dist. LEXIS 63006, at *5 (S.D. Tex. 2005).

36.    Plaintiffs' affidavit contains several false statements in direct contradiction to previous deposition testimony in an attempt to survive summary judgment. [Doc. 44-7 at p. 25, ll. 1-5]. It is clear the sham affidavit was created in response to survive the standing defects of Jelldy Argueta raised in Defendants' summary judgment motion and thus

17

provides no competent evidence. *Compare* [Doc. 43, at Sec. 5] *with* Jelldy Argueta Affidavit [Doc. 56-1], *and* Jelldy Argueta's Deposition [Doc. 44-7 at p. 25, ll. 1-5].

37.    Plaintiffs' request to "substitute" decedent's mother Blanca Granado should also be denied. [Doc. 56, at p. 64]. Like Jelldy Argueta, Granado also testified she does not know anything about Argueta's finances, if he had a bank account, if he had any assets, if he was ever married, or if he had any children. [Doc. 44-6 at p. 32, ll. 10-22]. Blanca did not pay or handle any expenses surrounding Argueta's death. [Doc. 44-6 at p. 38, ll. 6-13]. Further, Blanca was not involved in estate proceedings and is not aware of anyone in her family being involved in any Argueta estate administration. [Doc. 44-6 at p. 39, ll. 11-18].  Thus, Blanca Granado is equally unqualified to serve as Argueta's representative and any attempt to substitute Granado would unfairly prejudice the Defendants at this late stage in litigation.

CONCLUSION

38.    For these reasons, and the evidence and authorities identified in Defendants' summary judgment motion, the Court should enter an order granting Defendants' Motion for Summary Judgment [Doc. 43], and that the Plaintiff take nothing from this lawsuit, and for all other relief Defendants are justly entitled.

Respectfully submitted,

By: */s/ Norman Ray Giles*
William S. Helfand
Attorney-in-Charge
State Bar No. 09388250
Southern District of Texas Bar No. 8791
Bill.Helfand@lewisbrisbois.com
Norman Ray Giles
State Bar No. 24014084
Southern District of Texas Bar No. 26966
Randy E. Lopez

18

State Bar No. 24091829
Southern District of Texas Bar No. 3369137
Norman.Giles@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767
(713) 759-6830 (fax)
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to

the following counsel of record in accordance with the District's ECF service rules on this

10th day of March 2022.

Gene A. Watkins
gwatkins@shermanwatkins.com
Ellyn J. Clevenger
ellynclevenger@gmail.com
*Attorneys for Plaintiffs*

*/s/ Norman Ray Giles*

19